IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | Chapter 11 |
| EAGLE, INC.,[1] | Case No. 15-____ (____) |
| Debtor. | Section ____ |

**DECLARATION OF RAYMOND TELLINI, PRESIDENT OF EAGLE, INC., IN SUPPORT OF CHAPTER 11 PETITION AND INITIAL PLEADINGS**

1. My name is Raymond Tellini. I am the President of Eagle, Inc., the above-captioned debtor and debtor in possession ("**Eagle**" or the "**Debtor**"). Eagle is organized under the laws of the State of Louisiana. I have been employed by Eagle since December 2012. In my capacity as Eagle's President, I am familiar with Eagle's day-to-day operations, business affairs, and books and records.

2. I am authorized to submit this declaration (this "**Declaration**") in support of the Debtor's petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), filed on the date hereof (the "**Petition Date**"). I submit this Declaration in support of the Debtor's petition and request for relief in the form of motions and applications (collectively, the "**Initial Pleadings**"), as well as to assist the Court and other interested parties in understanding the circumstances leading up to the commencement of this chapter 11 case (this "**Chapter 11 Case**"). I am familiar with the contents of each of the Initial Pleadings, and I believe that the relief sought therein is necessary to permit an effective transition into chapter 11.

---

[1] The last four digits of the Debtor's taxpayer identification number are 5440. The Debtor's address is 1100 Poydras Street, 30th Floor, New Orleans, LA 70163.

3. This Declaration is submitted pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure, and I am authorized to submit it on behalf of the Debtor. All facts set forth herein are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, and/or information supplied to me by other members of the Debtor's management and the Debtor's advisors. If called upon to testify, I would testify to the facts set forth herein on that basis.

4. Part I of this Declaration provides a background on Eagle's corporate history and business and summarizes the circumstances leading to the commencement of the Chapter 11 Case. Part II sets forth the relevant facts in support of the Initial Pleadings.

### I. HISTORY OF DEBTOR AND REASONS FOR FILING

#### A. The Debtor

5. Eagle was founded in 1920 and is based in New Orleans, Louisiana. It is a wholly owned subsidiary of Eagle Acquisition Inc. ("**Eagle Acquisition**") and wholly owns Eagle QSF, L.L.C. ("**QSF**"), a qualified settlement fund that was established in 2013 to receive insurance settlement proceeds.[2]

6. Eagle's business primarily consisted of the sale of gaskets and the sale and installation of insulation and insulation-related products, many of which gaskets, insulation, and insulation-related products contained asbestos. Eagle discontinued the distribution and sale of asbestos-containing products in the late 1970s and ceased all operations in 2006 other than the management of asbestos litigation and insurance rights.

---

[2] I am the President of Eagle Acquisition and, through Eagle QSF Management LLC ("**QSF Management**"), serve as the manager of QSF.

7. Beginning in 1985 and continuing to the present day, Eagle has been presented with numerous claims by persons alleging bodily injury, including disease, disability, and death, as a result of their respective exposures to asbestos-containing materials allegedly distributed, handled, installed, or sold by Eagle. As of the date hereof, there are nearly 20,000 pending lawsuits against Eagle alleging asbestos-related injuries.

**B.    Circumstances Leading to the Commencement of the Chapter 11 Case**

8. In light of the mounting claims filed against Eagle, on or about January 1, 1996, Eagle and four of its insurers, United States Fidelity & Guaranty Company ("**USF&G**"), Commercial Union Insurance Company ("**Commercial Union**"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("**National Union**"), and International Surplus Lines Insurance Company ("**ISLIG**"), entered into a defense agreement (the "**Defense Agreement**") that established certain percentages that each of the four above-listed insurers were to pay to defend claims made against Eagle and to pay settlements of and judgments arising from such claims.

9. From 1996 through 2002, numerous claims were defended and resolved in accordance with the Defense Agreement. However, in 2002, Commercial Union withdrew from the Defense Agreement leading to its eventual termination after the remaining parties were unable to re-negotiate its terms. Between 2003 and 2007, Eagle ultimately entered into settlement agreements with (i) Commercial Union, American Employers Insurance Company, and OneBeacon America Insurance Company ("**OneBeacon**"), (ii) National Union, and (iii) USF&G.

10. On September 5, 2013, Eagle entered into a coverage settlement agreement (the "**Fireman's Fund Settlement Agreement**") with Fireman's Fund Insurance Company,

American Automobile Insurance Company, American Insurance Company, and Associated Indemnity Company (collectively, "**Fireman's Fund**"). On August 4, 2015, Eagle entered into a coverage settlement agreement (the "**First State Settlement Agreement**" and, together with the Fireman's Fund Settlement, the "**Bankruptcy-Related Settlement Agreements**")[3] with First State Insurance Company and Hartford Financial Services Group, Inc. (together, "**First State**").

11. The Debtor's goal in this bankruptcy process is to confirm a plan of reorganization which, pursuant to 11 U.S.C. Section 524(g) ("**Section 524(g)**"), implements a channeling injunction and trust to resolve the Debtor's liability for asbestos related claims. The proceeds from the Bankruptcy-Related Settlement Agreements and Eagle's remaining rights to insurance coverage will provide funding for the Chapter 11 process and the Section 524(g) trust. The Bankruptcy-Related Settlement Agreements require: (i) Eagle to use it best efforts to obtain an injunction pursuant to section 105 of the Bankruptcy Code to protect Fireman's Fund and First State from third party asbestos-related claims asserted against Fireman's Fund and First State while the Chapter 11 Case is pending and (ii) entry of a final order confirming an Eagle plan of reorganization that, pursuant to Section 524(g), provides for the implementation of a channeling injunction protecting Eagle, Fireman's Fund, First State, and other settling insurers from asbestos-related suits and claims and establishes a trust to resolve such suits and claims.

12. Eagle is in ongoing coverage litigation in the United States District Court for the Eastern District of Louisiana, Case No. 2:13-cv-06217-JCZ-MBN, with OneBeacon, Stonewall Insurance Company, Houston General Insurance Company, Pacific Employers Insurance

---

[3] The discussion of the Bankruptcy-Related Settlement Agreements contained herein is a summary of the salient terms of the Bankruptcy-Related Settlement Agreements and is qualified in its entirety by the Bankruptcy-Related Settlement Agreements. If there are any inconsistencies between the summary contained herein and the Bankruptcy-Related Settlement Agreements, the Bankruptcy-Related Settlement Agreements shall control.

Company, Allied World Assurance Company (U.S.) Inc., Excess Insurance Co. Ltd, Portman Insurance Limited (AXA S.A.), The Prudential Assurance Co. Ltd, Royal & Sun Alliance PLC, Ageas Insurance Limited, Riverstone Insurance (UK) Limited, Continental Insurance Company, Yorkshire Ins. Co. Ltd. "L" A/C, Tenecom Ltd., and Skandia UK Insurance Co. Ltd. "T" A/C, among others (collectively, the "**Coverage Litigation Parties**"). Eagle is in active settlement negotiations with the Coverage Litigation Parties.

## II. THE DEBTOR'S INITIAL PLEADINGS

13. To enable the Debtor to operate effectively in its Chapter 11 Case, the Debtor will file the Initial Pleadings described below as soon as practicable after the Petition Date. In connection with the preparation of this Chapter 11 Case, I have reviewed, or will review prior to their filing, each of the Initial Pleadings. It is my understanding that a hearing on the Initial Pleadings will be scheduled at the convenience of the Court after interested parties have received adequate notice of such pleadings. I believe the information contained in the Initial Pleadings is accurate and correct. As set forth more fully below, I believe the entry of orders granting the relief requested in these motions and applications is critical to the Debtor's ability to preserve the value of its assets and assist in its reorganization efforts.

A. *Motion of Debtor for an Order (I) Authorizing the Filing of a List of the Twenty Law Firms Representing the Largest Numbers of Asbestos Plaintiffs Asserting Claims Against the Debtor, (II) Authorizing the Listing of Addresses of Counsel for Asbestos Claimants in Creditor Matrix in Lieu of Claimants' Addresses and (III) Approving Notice Procedures for Such Claimants* (the "**Asbestos Claimant Notice Motion**").

14. In the Asbestos Claimant Notice Motion, filed concurrently herewith, the Debtor seeks entry of an order (i) authorizing the Debtor to file a list of the twenty law firms representing the largest numbers of asbestos plaintiffs asserting claims against the Debtor in lieu of a list of the holders of the twenty largest unsecured claims, (ii) authorizing the Debtor to list

the addresses of counsel for asbestos claimants in the creditor matrix in lieu of the claimants' addresses, and (iii) approving notice procedures for such claimants.

15. As noted above, Eagle has been named in nearly 20,000 lawsuits alleging bodily injury, including disease, disability, and death, as a result of exposure to asbestos-containing materials allegedly distributed, handled, installed, or sold by Eagle. It is my understanding that nearly all of the Debtor's known creditors are claimants asserting asbestos-related claims. The only other known creditors of the Debtor are certain advisors to the Debtor and QSF. The Debtor thus anticipates that the United States Trustee will appoint an official committee of unsecured creditors comprised principally or entirely of asbestos claimants.

16. The Debtor does not believe that listing the individual asbestos claimants with the largest unsecured claims against the Debtor would facilitate the United States Trustee's appointment of a creditors' committee. Because the majority of asbestos claimants hold unliquidated claims against the Debtor, it is difficult to determine which individual asbestos claimants may hold the largest unsecured claims. Accordingly, the Debtor seeks to file a list of the twenty law firms representing the largest numbers of asbestos plaintiffs asserting claims against the Debtor in lieu of a list of the holders of the twenty largest unsecured claims.

17. At this time, the address of each asbestos claimant is not readily available to the Debtor, and collecting the individual addresses would require a massive manual review of Eagle's files and time-consuming diligence to attempt to ensure that the information regarding each of the nearly 20,000 claimants asserting asbestos-related claims is accurate and, if not, to obtain the updated information. Accordingly, the Debtor seeks to list the addresses for counsel for asbestos claimants in the creditor matrix in lieu of the individual claimants' addresses, and seeks to implement a notice procedure by which the court-appointed noticing agent will send all

required notices, mailings, and other communications related to this Chapter 11 Case to counsel of record for the asbestos claimants in order to ensure such claimants receive proper and timely notice of filings and critical events in this Chapter 11 Case.

**B.    Retention of Professionals**

*Debtor's Application for Order Authorizing the Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Bankruptcy Counsel <u>Nunc Pro Tunc</u> to the Petition Date* **(the "<u>Young Conaway Retention Application</u>")**.

18.    In the Young Conaway Retention Application, Eagle seeks entry of an order authorizing it to employ and retain Young Conaway Stargatt & Taylor, LLP ("<u>Young Conaway</u>") as its general bankruptcy counsel with regard to the filing and prosecution of this Chapter 11 Case, and all related matters, *nunc pro tunc* to the Petition Date, in accordance with Young Conaway's normal hourly rates and reimbursement policies.

19.    The professional services that Young Conaway will render to the Debtor include, among other things, the following: (i) providing legal advice with respect to the Debtor's powers and duties as a debtor in possession in the continued operation of its business and management of its properties; (ii) pursuing confirmation of a plan and approval of a disclosure statement; (iii) preparing, on behalf of the Debtor, necessary applications, motions, answers, orders, reports, and other legal papers; (iv) appearing in Court and protecting the interests of the Debtor before the Court; and (v) performing all other legal services for the Debtor that may be necessary and proper in these proceedings.

20.    Young Conaway has submitted the affidavit of Edwin J. Harron representing that: (i) Young Conaway does not hold or represent any interest adverse to Eagle's estate; (ii) Young Conaway is a "disinterested person" as that phrase is defined in section 101(14) of the

Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and (iii) Young Conaway's employment is necessary and in the best interests of Eagle and Eagle's estate.

21. I believe that Young Conaway is both well qualified and uniquely able to represent Eagle in this Chapter 11 Case in an efficient and timely manner, and that such representation will be in the best interests of Eagle's estate, creditors, and all parties in interest.

***Debtor's Application for Order Authorizing the Retention and Employment of Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. as Local Bankruptcy Counsel Nunc Pro Tunc to the Petition Date* (the "Barrasso Usdin Retention Application").**

22. In the Barrasso Usdin Retention Application, Eagle seeks entry of an order authorizing it to employ and retain Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. ("**Barrasso Usdin**") as its local bankruptcy counsel *nunc pro tunc* to the Petition Date, in accordance with Barrasso Usdin's normal hourly rates and reimbursement policies.

23. The professional services that Barrasso Usdin will render to the Debtor include, among other things, the following: (i) providing legal advice with respect to the Debtor's powers and duties as a debtor in possession in the continued operation of its business and management of its properties; (ii) pursuing confirmation of a plan and approval of a disclosure statement; (iii) preparing, on behalf of the Debtor, necessary applications, motions, answers, orders, reports, and other legal papers; (iv) appearing in Court and protecting the interests of the Debtor before the Court; and (v) performing all other legal services for the Debtor that may be necessary and proper in these proceedings. Young Conaway and Barrasso Usdin will coordinate and avoid duplication of effort.

24. Barrasso Usdin has submitted the affidavit of Stephen H. Kupperman representing that: (i) Barrasso Usdin does not hold or represent any interest adverse to Eagle's estate; (ii) Barrasso Usdin is a "disinterested person" as that phrase is defined in section 101(14) of the

Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and (iii) Barrasso Usdin's employment is necessary and in the best interests of Eagle and Eagle's estate.

25. I believe that Barrasso Usdin is both well qualified and uniquely able to represent Eagle in this Chapter 11 Case in an efficient and timely manner, and that such representation will be in the best interests of Eagle's estate, creditors, and all parties in interest.

*Application of the Debtor for an Order Authorizing the Appointment of Epiq Bankruptcy Solutions, LLC as Claims, Noticing and Balloting Agent* (the "Epiq Application").

26. In the Epiq Application, the Debtor seeks an order appointing Epiq Bankruptcy Solutions, LLC ("Epiq") as the noticing and claims agent in this Chapter 11 Case. The Debtor wishes to engage Epiq to send out certain designated notices, to maintain claim files, to maintain a claims register and to assist with plan confirmation solicitation and balloting. The Debtor believes that such services will expedite the service of notices, streamline any claims administration process and the administration of this Chapter 11 Case, and permit the Debtor to focus on its reorganization efforts.

27. Based on Epiq's considerable experience in providing similar services in other chapter 11 cases, including asbestos-related chapter 11 cases, the Debtor believes that Epiq is well qualified to provide the Debtor with experienced noticing and claims processing services in connection with this Chapter 11 Case. A detailed description of the noticing and claims processing services that Epiq has agreed to render and the compensation and other terms of the engagement are provided the Epiq Application and the attachments thereto. I have reviewed the terms of the engagement and believe that the Debtor's estate will benefit as a result of Epiq's experience and noticing and claims processing services. Accordingly, the Debtor requires the appointment of Epiq as the noticing and claims agent in this Chapter 11 Case.

01:17676674.6

C. *Motion for Order Authorizing Debtor <u>Nunc Pro Tunc</u> to Employ and Pay Compensation to Insider* (the "<u>Insider Compensation Motion</u>").

28. In the Insider Compensation Motion, the Debtor seeks authority to pay monthly management fees, in the amount of $12,500, to QSF Management, of which I am the sole member. These management fees are my only source of compensation for the services I provide to the Debtor, QSF, and QSF Management. The Insider Compensation Motion recites all the requisite information set forth in Local Rule 4002-1(C)(2).

## CONCLUSION

In the Initial Pleadings, the Debtor seeks relief that will enable it to smoothly transition to, and effectively and efficiently operate in, its Chapter 11 Case. For the reasons described herein and in the Initial Pleadings, I believe that the relief required in the Initial Pleadings is in the best interest of the Debtor and its and estate and should be granted.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22nd day of September 2015.

By: _[signature]_
Name: Raymond Tellini
Title: President
Eagle, Inc.